IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

In re: §
Kenneth W. Miller, § Case No. 05-35070
Debtor. §

## MEMORANDUM OPINION

On this date, the Court issued its Order Assessing Sanctions, Annulling Automatic Stay to Validate Foreclosure Sale, and Dismissing Case. This Memorandum Opinion sets forth the basis for that Order.

This case was filed on April 4, 2005. This is Mr. Miller's third bankruptcy case since May 3, 2004. This case was filed for the purpose of allowing Mr. Miller to avoid the effects of court orders issued in Mr. Miller's previous bankruptcy cases by illegally stopping the foreclosure of Mr. Miller's home.

Mr. Miller is an experienced businessman. He has a history of substantial earnings. Between 1989 and 1998, Mr. Miller earned in excess of a quarter of a million dollars of income per year. When his business experienced reversals, he began attempts to recapitalize the business.

The recapitalization attempts failed to produce cash for the business. Instead, Mr. Miller was able to negotiate a series of agreements with Heathrow Financial Holdings, Ltd. However, Heathrow defaulted on every agreement it made with Mr. Miller and his companies. Heathrow's "agreements" contained funding proposals for various projects and company financings with proposed amounts ranging from $100 million to $350 million. Nevertheless, each time a funding date approached, Heathrow was unable to perform.

The Court concludes that Heathrow's proposals were not *bona fide*. Indeed, the Court declines to allow the debtor and his counsel to turn a blind eye to reality with respect to the Heathrow proposals. Mr. Greene attempts to justify the third filing, in part, on the basis of a new proposal by Heathrow. However, after Heathrow's extensive breaches, the new $350 million Heathrow proposal is wholly insufficient to justify the new filing.

Mr. Miller testified that he had—many months ago—reviewed information that showed Heathrow's financial capabilities. However, Mr. Miller was unable to produce the documents in Court and testified that he was not allowed to retain a copy of the materials that he had reviewed. Mr. Miller is a sophisticated businessman. He and his counsel know that financial transactions in the range of $350 million are not arranged by entities that (i) continually default on their obligations, (ii) have no audited financial statements, and (iii) do not allow their prospective clients to retain information that they have reviewed.

In late 2003, Mr. Miller drew down approximately $178,479 from his pension account. This was the entire balance in the account. Those funds were used to make a lump sum payment on his home mortgage. He has lived on the balance of the funds. Since late 2003, Mr. Miller has had no substantial income. Mr. Miller had no regular income when he filed the present bankruptcy case.

Mr. Miller filed his first bankruptcy case under chapter 13 on May 3, 2004. His bankruptcy lawyer was Thomas Greene. Mr. Miller did not make any payments to the chapter 13 trustee. On May 24, 2004, the chapter 13 trustee sought to dismiss Mr. Miller's case. Mr. Miller failed to respond to the motion to dismiss. Mr. Miller also failed to attend his chapter 13 meeting of creditors. Instead, on June 15, 2004, Mr. Miller converted his chapter 13 bankruptcy case to a case under chapter 7. Mr. Miller's chapter 7 schedules listed substantial assets. These

were principally comprised of his ownership in, and claims against, his business interests. According to Mr. Miller's schedules, the value of his business assets exceeded $3.5 million.

As set forth above, Mr. Miller had not been making payments on his home mortgage. On June 22, 2004, Mr. Miller's mortgage company filed a motion seeking relief from the stay to allow foreclosure of Mr. Miller's home. The motion was set for hearing on July 16, 2004. Mr. Miller failed to answer the motion or to appear at the hearing. Accordingly, on July 16, 2004, this Court issued its order lifting the stay to allow the mortgage company to foreclose.

Mr. Miller again failed to attend his meeting of creditors in the chapter 7 case. Consequently, the chapter 7 trustee moved to dismiss the chapter 7 bankruptcy case. On September 17, 2004, the Court denied the trustee's motion and required Mr. Miller to attend his creditors' meeting.

The chapter 7 trustee determined that there were assets to administer. Additionally, the chapter 7 trustee sought—and the Court issued—an order extending the deadline for filing objections to Mr. Miller's discharge.

Meanwhile, Mr. Miller attempted to avoid the effect of the order lifting the automatic stay. On September 7, 2004, Mr. Miller filed his second bankruptcy case. Mr. Greene again served as Mr. Miller's lawyer. This case was filed while the first case was still pending. Mr. Miller admits that the sole reason for the filing was to avoid the effect of the order lifting the stay. There had been no material change in Mr. Miller's circumstances between the first and the second bankruptcy cases.

During the second bankruptcy case, Mr. Miller made no payments to his mortgage company or to the chapter 13 trustee. On December 21, 2004, Mr. Miller's mortgage company again sought relief from the automatic stay. On January 14, 2005, the parties announced an

agreement between Mr. Miller and his mortgage company. The agreement was reduced to an agreed order (issued by the Court) that provided that the automatic stay would terminate if Mr. Miller did not stay current on his payments. The agreed order also required Mr. Miller to amend his chapter 13 plan to account for the missed payments to his mortgage company. The agreed order mandated that Mr. Miller remain current on his payments to the chapter 13 trustee. However, on December 29, 2004, the chapter 13 trustee filed a motion seeking to dismiss the case for failure to make periodic payments to the chapter 13 trustee. On January 25, 2005, the chapter 13 case was dismissed for failure to make the trustee payments.

Undaunted, Mr. Greene filed a third bankruptcy petition for Mr. Miller. The third petition was filed on April 4, 2005—on the eve of foreclosure. The sole purpose of the third filing was to avoid foreclosure of the home. Mr. Miller and Mr. Greene decided to ignore the two prior orders lifting the automatic stay, and to ignore the prior dismissal of the second case. There had been no change in circumstances. Mr. Miller made no payments to the chapter 13 trustee or to the respective trustee during the entirety of the three cases.

As stated, Mr. Miller had no regular income as of the date of the third filing. Only an individual with regular income may be a chapter 13 debtor. 11 U.S.C. § 109(e). Accordingly, the Court concludes that Mr. Miller was ineligible to be a chapter 13 debtor when the third case was filed. This eligibility information was known to Mr. Greene at the time of the filing. Nevertheless, Mr. Greene failed to fulfill his investigatory obligations under Rule 9011 and filed the bankruptcy case for an ineligible debtor.

The schedule of personal property assets filed in the third case is extraordinarily troubling to the Court. The schedules—allegedly signed under penalty of perjury—state that Mr. Miller owns the very assets that are presently being administered in the chapter 7 bankruptcy. At a

hearing held on April 29, 2005, the Court expressed grave concern over the filing of the new chapter 13 case with respect to assets owned by the chapter 7 estate. The Debtor subsequently amended the schedules—but continued to assert dominion over the assets. For example, in his brief, the Debtor alleges that the recapitalization of the business assets will be utilized in the chapter 13 case. *See* Docket #33.

However, the most troubling aspect of the schedules—filed under penalty of perjury—is that they were filed without review by Mr. Miller. Mr. Miller testified that he had not signed the schedules or the bankruptcy petition. The schedules were amended to delete the business assets—and filed again under penalty of perjury. Mr. Miller testified that he neither reviewed nor signed the amended schedules before they were filed.

The filings raise serious and substantial issues about Mr. Greene. When Mr. Greene electronically filed the schedules with an "/s/" representing Mr. Miller's signature, it was a representation to this Court that Mr. Miller had reviewed and signed the original schedules under penalty of perjury. Instead, the Court is confronted with schedules and a petition that the Debtor did not sign. The schedules are acknowledged to be in error—and the Court questions whether the error is intentional. However, by filing the petition and schedules without having obtained his client's signature, Mr. Greene has breached his ethical responsibilities to this Court.

Federal Rule of Bankruptcy Procedure 9011 governs sanctions with respect to bankruptcy-related proceedings. Pursuant to Rule 9011(c)(2): "A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." FED. R. BANKR. P. 9011(c)(2). Further, the Court notes that both Mr. Miller and Mr. Greene are in personal bankruptcy. Accordingly, the monetary

sanction that is appropriate in this case is being set at an amount that is further reduced from the gravity of the situation.

Mr. Greene and Mr. Miller are each assessed a $2500.00 monetary sanction. The Court does not believe that this amount poses an undue hardship on either Mr. Greene or Mr. Miller, and believes that this amount is sufficient, under the circumstances, to deter future conduct. In coming to this conclusion, the Court notes that this amount is only slightly more than Mr. Miller agreed to pay Mr. Greene for his services, and less than two days of billable time by Mr. Greene under his prevailing rates. Further, Mr. Miller's testimony established that Mr. Miller does not consider $2500.00 to be an excessive amount of money.

As to Mr. Greene, two additional matters must be addressed. First, it is appropriate that Mr. Greene take remedial continuing legal education courses. Mr. Greene apparently disregards this Court's orders, and apparently believes that he can file repetitive cases solely to avoid the effects of those orders. Moreover, he believes that he can represent that his client has signed papers under penalty of perjury when the papers have not been signed.

Second, the Court must consider Mr. Greene's future practice of law before this and other courts. This Court does not have the power to suspend Mr. Greene from practice in the Southern District of Texas. Nevertheless, the integrity of the courts is at stake when lawyers can falsely file electronic documents that allege that the documents have been signed by the client under penalty of perjury. Pursuant to the Local Rules for the Southern District of Texas, this matter is referred to the Chief Judge of the District Court to determine what, if any, action against Mr. Greene is appropriate. *See* BLR 1001(e) and Rule 5 of Appendix A to the Local Rules of the District Court. In making this reference, the Court notes that Mr. Greene is a respected practitioner before this Court and that this Court is unaware of any prior ethical issues

concerning Mr. Greene.  This Court recommends that these factors be considered by the District Court in its determination of the appropriate course of conduct.

Signed at Houston, Texas on June 7, 2005.

_____
**Marvin Isgur**
**UNITED STATES BANKRUPTCY JUDGE**